**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
| | : | |
| **Ronald Hyman,** | : | |
| | : | |
| Debtor. | : | Case No. 08-12791 JKF |
| | : | |
| **Ronald Hyman,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **The Abstract Company, Inc. &** | : | |
| **Edwin P. Smith, Esquire,** | : | |
| | : | |
| Defendants. | : | Adv. No. 11-0852 |
| | : | |

**ORDER DENYING THE DEBTOR'S**
**MOTION FOR RECONSIDERATION**

This 24th day of May, 2013, upon consideration of the Debtor's Motion for Reconsideration (the "Motion") of the Court's January 29, 2013 Order directing the Defendants to pay a total of $5,972.70 to the Debtor in costs and fees and denying additional attorney's fees to the Debtor (the "January Order"), following the granting of summary judgment on the Debtor's adversary complaint on September 26, 2012;[1]

---

[1] The Court also reviewed the Defendants' Motion for Sanctions (Doc. Nos. 63 and 65, the "Motion for Sanctions") and the The Debtor's Response thereto (Doc. No. 71). The Motion for Sanctions requests that the fee agreement submitted as evidence by the the Debtor (discussed below) be precluded as evidence and not considered by the Court.

The Motion for Sanctions will be DENIED as MOOT, or, in the alternative, DENIED on the
(continued...)

## Procedural Background

**AND** Ronald Hyman, the Debtor, having filed for bankruptcy protection under Chapter Seven on April 29, 2008;

**AND** following the Debtor's discharge, his bankruptcy case being closed on December 5, 2008;

**AND** upon Motion of the Debtor, the Court having re-opened the Debtor's bankruptcy case on November 17, 2011 to allow the Debtor to file this Adversary Proceeding. (Doc. No. 56 in the main case);

**AND** the Adversary Proceeding having been filed by the Debtor against the Defendants on November 23, 2011, seeking, *inter alia*, relief for an alleged violation of the discharge injunction, 11 U.S.C. § 524(a)(2);[2]

**AND** on December 23, 2011, Defendant Abstract Co. having filed a Motion to Dismiss the Adversary Proceeding. (Doc. No. 5);

---

[1] (...continued)
MERITS for the following reasons: 1) the Motion was filed at 5:00 p.m. on January 23, 2013, following both the completion of the final hearing in this matter and the Court's pronouncement of its final ruling from the bench; 2) the relevant arguments contained in the Motion for Sanctions were made by Defendants' counsel orally at the January 23, 2013 hearing on damages and again in their Response to the Motion for Reconsideration, and ; 3) the substantive arguments of the Motion for Sanctions are considered and rejected in the body of this Order.

[2] Prior to the Debtor's filing for relief under Chapter Seven on April 29, 2008, he filed a state court lawsuit against, among others, the Abstract Company, Inc. (the "State Court Action."). The basis of the State Court Action was real estate fraud.
Following the closing of the Debtor's bankruptcy case on December 5, 2008, the Abstract Company filed a Dragonetti action against the Debtor on March 21, 2011 (the "Dragonetti Action"), alleging that the State Court Action was instituted only to obtain Abstract's insurance funds. See Complaint, Ex.C, ¶8.
The Debtor was dismissed with prejudice from the Dragonetti Action on May 24, 2011. See Ex. H to Doc. No. 33.

**AND** on December 27, 2011, Defendant Edwin P. Smith, Esquire having also filed a Motion to Dismiss the Adversary Proceeding. (Doc. No. 6, together with Abstract's Motion, the "Motions to Dismiss");

**AND** on February 14, 2012, the Court having denied the Defendants' Motions to Dismiss the Adversary Complaint. (Doc. No. 21);

**AND** on February 22, 2012, the Defendants having together answered the Complaint. (Doc. No. 22);

**AND**, following discovery, the parties having filed cross-motions for summary judgment (the "Cross-Motions"). (Doc. Nos. 30 and 33);

**AND** prior to the hearing on the Cross-Motions, the Defendants having filed two Motions in Limine (collectively, the "Motion in Limine"), (Doc. Nos. 43 and 44), asserting that the Debtor should be precluded from presenting evidence with regard to damages at trial;[3]

**AND** on September 26, 2012, for reasons stated on the record in open court, the Court having denied the Defendants' Motion for Summary Judgment and granted the Debtor's Motion for Summary Judgment (the "Summary Judgment Hearing"). (Doc. Nos. 53 and 54 (collectively, "the Summary Judgment Order"));

**AND** the Summary Judgment Order not having being appealed;

**AND** following the entry of the Summary Judgment Order, a hearing to consider the Debtor's request for damages and attorney's fees contained in his Motion for

---

[3] Because the parties agreed that the issues related to the Motion in Limine could be adjudicated at the hearing on summary judgment damages, a separate hearing on the Motion in Limine was, by agreement, not held.

3

Summary Judgment having been held on November 28, 2012 and continued to January 23, 2013 (collectively, the "Damages Hearing");

**AND** upon the completion of the Damages Hearing, and for reasons stated on the record, the Court having determined that the Debtor was entitled to a total of $4,460 in expenses and that his attorneys (Carol McCullough and Stuart Eisenberg, collectively "the Debtor's Counsel") were entitled to a total of $1,512.70 in expenses; See the January Order (Doc. No. 67);

**AND** for reasons discussed in open court at the Damages Hearing, the Court having held at the Damages Hearing that the Debtor's Counsel were not entitled to further fees beyond this award;

**AND** on January 23, 2013, following the Damages Hearing, the Defendants having filed a Motion for Sanctions against the Debtor and his attorneys. (Doc. Nos. 63 and 65; see fn.1);

**AND** following the entry of the January Order, the Debtor having filed the Motion on February 1, 2013 and filed the Amended Motion on February 6, 2013. (Doc. Nos. 66 and 72);

**AND** the Motion arguing, in sum, that the Court erred in issuing the January Order both because the Debtor's Counsel's fee agreement should not have been precluded as evidence by the court at the Damages Hearing and also because the sanctions against the Defendants should (as a result) have been greater;

**AND** the Defendants having responded to the Motion (the "Response"), arguing that the Debtor's failure both to comply with Federal Rules 26(a) and or (e), and to

4

respond to their subpoena prejudiced the Defendants and warrant the preclusion of the fee agreement; see Doc. #74;

## Standard on a Motion for Reconsideration

**AND** a motion to reconsider pursuant to Federal Rule 59(e)[4] being appropriate where the moving party demonstrates one of the three following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011);

**AND** motions for reconsideration being granted sparingly, due to the fact that litigants must overcome a "high burden" in demonstrating that the above standard is met. ABS Brokerage Servs., LLC v. Penson Fin. Servs., Inc., 2010 WL 3257992, at *5 (D.N.J. Aug. 16, 2010); see also In re Roemmele, 466 B.R. 706, 712 (Bankr. E.D. Pa. 2012) (citing Fanelli v. Continental Cas. Co., 2006 WL 3387187, at *2 (M.D. Pa. Nov. 21, 2006));

**AND** it being improper to submit previously available evidence as a basis for a motion for reconsideration. See e.g. Blystone v. Horn, 664 F.3d at 415-16 (evidence "that is not newly discovered . . . cannot provide the basis for a successful motion for reconsideration."); Egonmwan v. Cook County Sheriff's Dept., 602 F.3d 845, 852 (7th

---

[4] Federal Rule 59(e) is made applicable to this proceeding via Bankruptcy Rule 9023.

Cir. 2010) ("motions under Rule 59(e) cannot be used to introduce evidence that could have been presented earlier.");[5]

## Standard for Awarding Attorney's Fees After the Violation of the Discharge Injunction

**AND** there being no private right of action for a violation of the discharge injunction pursuant to 11 U.S.C. § 524,[6] bankruptcy courts employ their contempt power under § 105 to remedy such violations. In re Meyers, 344 B.R. 61, 65 (Bankr. E.D. Pa. 2006) (citing cases);

**AND** a court being permitted to impose sanctions that are coercive and not punitive. In re Hardy, 97 F.3d 1384, 1390 (11th Cir. 1996) (noting that a court should ask "(1) whether the award directly serves the complainant rather than the public interest and (2) whether the contemnor may control the extent of the award.");

**AND** the standard being that in order to be awarded attorney's fees following the violation of the discharge injunction, the Debtor must demonstrate that he incurred an obligation to pay such fees. See e.g., In re Meyers, 344 B.R. at 68; In re Rodriguez, 2012 WL 589553, at *5 (Bankr. D.N.J. 2012); c.f. In re Hedetneimi, 297 B.R. 837, 843 (M.D. Fl. 2003) (holding that, because the Debtor was represented *pro bono* and thus not responsible for fees, the Debtor could not recover attorney's fees); In re Thompson, 426 B.R. 759, 765 (N.D. Ill. 2010) (under a §362 analysis, the Plaintiff can only recover attorney's fees for which he is actually responsible for, based on a clear writing);

---

[5] For this reason, the 130 pages of exhibits attached to the Defendants' Response to the Motion, none of which is purported to be newly discovered evidence, will not be considered.

[6] Summary judgment was granted to the Debtor on his claim that the Defendants violated the discharge injunction.

6

**The Parties' Positions with Regard to Attorney's Fees, Costs, and the Existence of a Fee Agreement Between the Debtor and his Attorneys**

**AND** the Debtor's Motion for Summary Judgment having requested a total of $91,990.93 in fees and costs, broken down as follows:

$76,122.83:  legal fees for the Debtor's attorneys McCullough and Eisenberg
$1,368.10:  legal expenses
$4,305.00:  The Debtor's personal time spent on the case (at $150/hour)
$60.00:  The Debtor's personal expenses
$10,135.00:  The Debtor's emotional distress

See Exs. L and M to The Debtor's Motion for Summary Judgment, Doc. Nos. 30-31;

**AND** the Defendants having argued, in their Objection to the Debtor's Motion for Summary Judgment, that the Debtor may not recover attorney's fees because he has not paid any fees and failed to offer sufficient evidence of a fee arrangement. (Doc. No. 35 at 14);[7] See also Defendant's Motion for Summary Judgment at 12; Motion in Limine (doc. no. 43) at 4;

**AND** the Debtor initially having been equivocal, at best, on the question of whether a fee arrangement between him and his counsel exists: at first it was stated that there was no fee agreement. See Response to Motion in Limine, Doc. No. 45 at 3 ("Defendants argue that Mr. Hyman paid no attorney's fees, has no obligation to pay attorney's fees and has no arrangement with his attorney for the payment of attorney's fees. This is correct . . . "); Debtor's Motion for Summary Judgment (Doc. No. 30-2 at

---

[7] Defendant's Opposition to the Debtor's Summary Judgment Motion also asserted that the Debtor's exhibit L should be precluded from consideration because it is hearsay. Doc. No. 35 at 15. This argument will not prevail for at least two reasons. First, the Defendants did not pursue this argument at the Damages Hearing. Second, Exhibit L falls into an exception for hearsay because it is a record of regularly conducted activity. See F.R.C.P. 803(6).

7

24, n.14) ("Plaintiff's counsel undertook their representation . . . on the basis that they would seek attorney's fees and costs from Defendants."); see also see transcript of November 28, 2012 hearing at 23 (Doc. No. 62, hereinafter "Tr.1") (The Debtor did not recall any kind of fee agreement with his lawyers during his deposition);

**AND** the Debtor's deposition testimony being likewise indefinite on the question of whether a fee agreement between him and his counsel existed; at certain points the Debtor asserts he does not recall such an agreement. At another point in his sworn testimony, the Debtor states he has no obligation to pay, and at third point the Debtor seems to indicate that there was an agreement in writing. See Deposition of the Debtor, Ex. G to Doc. No. 44 at 2-4;

**AND** the Debtor's Counsel having further testified that the Debtor never received a bill and never paid for litigation services following his discharge in bankruptcy; (Tr.1 at 70-71);

**AND** the Court having indicated at the conclusion of the Summary Judgment Hearing that in order to collect attorney's fees, the Debtor was expected to produce evidence - such as a fee agreement - that the Debtor actually owed fees. (Transcript of Summary Judgment Hearing, Doc. No. 57 at 19);

**AND** on October 8, 2012 (following this instruction by the Court), the Debtor having provided a record of a fee agreement between himself and his counsel, McCullogh Eisenberg, LLC (the "Fee Agreement") to opposing counsel; Tr.1 at 6 and Ex.D-1; Sanctions Motion at 8;

**AND** the Fee Agreement being dated March 25, 2011 and describing, *inter alia*, the work the Debtor's Counsel would perform for the Debtor:

> "Law Firm will prosecute the case of *Hyman v. The Abstract Company and Edwin P. Smith* in the United States Bankruptcy Court if necessary. . . You will be liable for all attorney's fees and costs incurred. However, if Law Firm prevails in Bankruptcy Court, it will attempt to recover not only compensatory damages for you, but attorney's fees and costs from The Abstract Company and its attorneys."

Ex. D-1;

**AND** the Fee Agreement setting forth that the Debtor's Counsel, Stuart A. Eisenberg and Carol B. Mccullough, would each be paid $350.00 per hour and that the firm's paralegals, Kara Cottrell and Simone Reyes, would each be paid $85.00 per hour; Ex. D-1;[8]

**AND** the Fee Agreement having only been produced and provided to the Defendants after the Summary Judgment Order was entered on September 26, 2012; (Tr.1 at 59-60);

**AND** due to the timing of the production of the Fee Agreement and the Debtor's Counsel's difficulties in producing evidence relating to this document, allegations having been made that the Agreement may have been fabricated; See e.g., Transcript of January 23, 2013 Damages Hearing (Doc. No. 69, hereinafter "Tr.2") at 10;

### The Discovery Difficulties with Regard to the Fee Agreement

**AND** due to the late production of the Fee Agreement and the suspicions related to its authenticity, prior to the November 28, 2012 Damages Hearing (the "November

---

[8] Correspondence from the Debtor's Counsel to Defendant's counsel refers to the "contingent fee rate charged by McCullough Eisenberg, LLC in such cases." Exs. D-6 and D-7; see also Exs. D-8 and D-9, D-10. However, the Fee Agreement makes no mention of this rate.

Hearing"), The Debtor's Counsel having received a subpoena (the "Subpoena") to produce the meta data related to the Fee Agreement in its "forensically sound, native format" (the "Meta Data"); see Tr.1 at 60-64;

**AND** The Debtor's Counsel having failed to produce the Meta Data prior to the November Hearing because, according to Mr. Eisenberg, one of The Debtor's Counsel:

> "I don't know what it is, number one.  Number two, I was not properly served with the subpoena . . . we also don't have the computers any longer."

Tr.1 at 62;

**AND** at the conclusion of the November Hearing, the Debtor's Counsel having been specifically ordered to comply with the Subpoena by January 11, 2013, prior to the continuation of the Damages Hearing; See Tr.1 at 105;[9]

**AND** the Debtor's Counsel's in-house computer technician, Louis Kahn, having examined the Debtor's Counsel's computers on November 28, 2012 in order to search for the Meta Data. (Tr. 2 at 4, 15);

**AND** Mr. Kahn not being a computer forensic specialist. (Tr. 2 at 8);

**AND** the results of Mr. Kahn's search, as well as an affidavit by Mr. Kahn, having been supplied at the request of Mr. Rowe of the office of Defendants' counsel, following a January 14, 2013 email from Mr. Rowe to the Debtor's Counsel's office.  (Tr. 2 at 4, 13-14);

---

[9] The colloquy between the Court and Mr. Eisenberg was as follows:

THE COURT: Mr. Eisenberg, we have a subpoena now that you've got plenty of time to answer, so I'm going to order an answer to that subpoena by January 11th.

MR. EISNBERG: Fine.

Tr. 1 at 105.

**AND**, despite the fact that Mr. Kahn's investigation was performed in November, 2012, the Debtor's Counsel having failed to respond or satisfy the Subpoena by the deadline, January 11, 2013, but instead having informed Mr. Rowe via email of the lack of information on January 14, 2013 and supplied Mr. Kahn's affidavit on January 22, 2013;[10] (Tr.2 at 4, 5, 8, 14);[11]

**AND** Mr. Kahn, upon his investigation into the Debtor's Counsel's computers, having found nothing responsive to the Subpoena;  (Tr.2 at 13);

**AND** the Debtor's Counsel having testified that the Fee Agreement was never saved on a computer, that there were no drafts of the Fee Agreement, nor any emails concerning it.  (Tr. 1 at 64, 65; Tr. 2 at 4-5, 13, 19);[12]

**AND** the Debtor's Counsel having failed to list the Fee Agreement in their disclosures pursuant to Fed. R. 26(a), despite the fact that these disclosures are dated approximately one year after the Fee Agreement; see Ex. R-9;

**AND** Defendants' Counsel having argued: (1) that the investigation by Mr. Kahn was submitted late and was an incomplete effort, at best; and (2) that Mr. Kahn, who is allegedly limited to providing IT services rather than being qualified to engage in forensic investigation, having used inadequate search terms and performed an incomplete review of the Debtor's Attorney's computers; see Tr.2 at 5-9;

---

[10] January 22, 2013 was the day before the final, continued hearing in this matter.

[11] A copy of Mr. Kahn's affidavit is attached to the Sanctions Motion as Exhibit J.

[12] This testimony - that a word processed document concerning a client in a modern day law firm was not saved on an attorney's computer, nor did any versions or electronic paper trail of it exist - makes the Court dubious as to the authenticity of the Fee Agreement.

11

## Reconsideration of the Exclusion of the Fee Agreement as Evidence to be Considered in Allowing Fees to the Debtor's Counsel

**AND** the Debtor's Counsel's conduct with regard to both the production of the Fee Agreement and the response to the Subpoena not rising to the level of professionalism expected of attorneys in this court;

**AND** for this reason, at the Damages Hearing, the Court having excluded consideration of the Fee Agreement and thereby having denied attorney's fees to the Debtor's Counsel due to Counsel's "failure to comply with discovery." (Tr.2 at 20);

**BUT** it being well established in this Circuit that

> the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of wilful deception or flagrant disregard of a court order by the proponent of the evidence . . . courts in this Circuit consider four factors in determining whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

In re Venom, Inc., 2010 WL 892203, at *3 (March 9, 2010). See also Nicholas v. Penn. State University, 227 F.3d 133, 148 (3d. Cir. 2000) (applying these factors as they relate to a violation of Federal Rules 26 and 37);

**AND** application of this four-part test favoring the Court's reconsideration of the exclusion of the Fee Agreement due to the facts both that admission of the Fee Agreement would not disrupt these proceedings and that the Debtor's Counsel were found not to have acted in bad faith as to the discovery. (Tr. 2 at 11-12);

12

**AND** the Court having also considered Defendant's argument that the Fee Agreement should be excluded due to the fact that the Debtor's violated Federal Rules 26(a) and 37;

**AND** although a court having discretion to sanction a party with regard to discovery violations under the Federal Rules,

> Guiding that discretion, as with any discretionary sanction, are the principles announced by the Third Circuit in Poulis v. State Farm Fire and Cas. Co., 74 F.2d 863, 867 (3d Cir.1984). In Poulis, the Third Circuit identified six factors a district court must consider before imposing sanctions, which, when taken together, create "a strong presumption against sanctions that decide the issues of a case. . . These are: (1) the extent of the party's personal responsibility, (2) prejudice to the adversary, (3) a history of dilatoriness, (4) whether the attorney's conduct was willful or in bad faith, (5) the availability of alternative sanctions, and (6) the meritoriousness of the claim. (citing Poulis, 747 F.2d at 868-70).

Stearns & Foster Bedding Co. v. Franklin Holding Corp., 947 F. Supp. 790, 815 and n.21 (D.N.J. 1996).  See also U.S. v. $8,221,877.16 in U.S. Currency, 330 F.3d 141 (3d Cir. 2003) (requiring consideration of Poulis factors when court dismissed case pursuant to Rule 37(b) for failure to respond to discovery);

**AND** in this case, consideration of the Poulis factors not favoring exclusion of the Fee Agreement, due, *inter alia*, to the facts that there is no history of dilatoriness (factor number three), there is no evidence of the attorneys' bad faith (factor number four), and the underlying claim (violation of the discharge injunction) is meritorious (factor number six);[13]

---

[13] The Court has also determined that the Fee Agreement may not be excluded under a theory of spoilation of evidence because there is no evidence of misconduct or bad faith.  See e.g. Bull v. United Parcel Service, Inc., 665 F.3d 68 (3d Cir. 2012); Tabon v. University of Penn. Health System, 2012 WL 2953216 (E.D. Pa. July 20, 2012).

**AND**, therefore, upon reconsideration, the Court having determined that exclusion of the Fee Agreement would be a manifest injustice.  For this reason, the Fee Agreement will be considered as evidence in this proceeding;

## Consideration of the Fee Agreement as Evidence does not Warrant Allowance of Fees to the Debtor's Counsel

**BUT**, despite the inclusion of the Fee Agreement as evidence in this matter, a close review of the record revealing that Debtor's Counsel admitted more than once - contrary to the provisions of the Free Agreement - that the Debtor did *not* incur an obligation to pay their fees.  <u>See</u> Debtor's Motion for Summary Judgment (Doc. No. 30-2 at 24, n.14) ("Because of the paucity of Plaintiff's income and his inability to pay attorney's fees and costs, Plaintiff's counsel undertook their representation . . . on the basis that they would seek attorney's fees and costs from Defendants."); Response to Motion in Limine, Doc. No. 45 at 3 ("Defendants argue that Mr. Hyman paid no attorney's fees, has no obligation to pay attorney's fees and has no arrangement with his attorney for the payment of attorney's fees.  This is correct. . . ");

**AND**, thus, prior to the introduction of the Fee Agreement, Debtor's Counsel having maintained that they would pursue legal fees only from the Defendants and that the Debtor had no independent obligation to pay;

**AND** no document evidencing this arrangement between the Debtor and his counsel;

**AND** the Fee Agreement also having failed to evidence a contingent fee arrangement between the Debtor and the Debtor's Counsel;[14]

---

[14] It is true that the Fee Agreement states that "if Law Firm prevails in Bankruptcy Court, it will attempt to recover not only compensatory damages for you, but attorney's fees and costs
(continued...)

**AND**, therefore, pursuant to the law cited above, the admission that the Debtor did not incur an obligation to pay his attorney's fees meaning that the Debtor may not be awarded attorney's fees in this action;

### Award of Damages Unrelated to the Fee Agreement that Were Provided in the January Order will not be Reconsidered

**AND** the sole issue being reconsidered by the Court is limited to the inclusion of the Fee Agreement as evidence.  No other matter will be reconsidered by the Court.[15]

**AND** the Debtor's Counsel not having raised the issue of punitive damages at either the Summary Judgment Hearing or the Damages Hearing; therefore, such damages will not be considered.

It is, therefore, hereby **ORDERED** and **DECREED** that:

(1) The Fee Agreement, as defined in this Order, is admitted into evidence.

(2) Notwithstanding admittance of the Fee Agreement into evidence, for reasons stated herein, the Debtor's Motion to Reconsider the Court's January 29, 2013 Order and the

---

[14] (...continued)
from [the Defendants]" ¶1 and "Client understands that Law Firm will attempt to recover attorney's fees and costs from Defendants at Law Firm's contingent fee rates, and that Client is not responsible for those rates."  ¶7.
However, this does not make the Fee Agreement a contingent fee agreement.  See Rules of Prof. Conduct, Rule 1.5 (c) 42 Pa. C.S.A ("A contingent fee agreement. . .  shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.").  The Fee Agreement does not state these arrangements or details.

[15] For reasons discussed on the record at the Damages Hearing, Defendants were held liable to the Debtor for $4,460 in damages and $1,1512.70 in costs.  See Doc. No. 67.
Specifically, the Debtor was awarded $2,150.00 for personal time spent on this matter, $60.00 for transportation expenses, and $2,250.00 for lost wages.

determinations made at the January 23, 2013 hearing is hereby **denied**.

(3) Defendant's Motion for Sanctions is hereby **denied**.

_____
HONORABLE JEAN K. FITZSIMON
United States Bankruptcy Judge

Copies to:

**The Debtor's Counsel**
Stuart A. Eisenberg, Esquire
Carol B. McCullough, Esquire
McCullough Eisenberg, LLC
65 West Street Road, Suite A-105
Warminster, PA  18974

**Defendants' Counsel**
Jeffrey B. McCarron, Esquire
Swartz Campbell LLC
Two Liberty Place
50 South 16th Street, 28th Floor
Philadelphia, PA  19102